FILED
1/14/15 3:29 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| CORINNE DAVIS | : | Case No. 13-11264-TPA |
| *Debtor* | : | Chapter 7 |
| | : | |
| CORINNE DAVIS | : | Adv. Proceeding No. 13-1103-TPA |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | Related to Doc No. 17 |
| NATIONAL COLLEGIATE TRUST | : | |
| *Defendant* | : | |

*Appearances:*     Laura S. Steehler, Esq., for the Debtor
Monette W. Cope, Esq., for Defendant
Keri P. Ebeck, Esq., for Defendant


## <u>MEMORANDUM OPINION</u>


Currently before the Court is the Plaintiff's ***Amended Adversary Complaint to Determine Dischargeability of Student Loans*** ("Complaint") filed at Document No. 17 seeking a discharge of her prepetition educational loans pursuant to *11 U.S.C. §523(a)(8).* [1] There are no material factual issues in dispute, and the Parties agree that the Court should decide the matter without a trial based on the stipulated facts, the admitted pleadings, responses, answers to

---

[1]     The Court's jurisdiction under *28 U.S.C. §§157 and 1334* was not at issue. This is a core proceeding pursuant to *28 U.S.C. §§157(b)(2)(A), (I) and (O).*

discovery, the admitted Exhibits, and the arguments contained in their *Briefs*.[2] After careful

consideration and for the reasons expressed below, the relief requested in the Debtor's *Complaint*

is denied and the Debtor's student loan debt is not excepted from discharge.


### PROCEDURAL AND FACTUAL HISTORY

On October 11, 2013, the Debtor, Corinne Davis ("Debtor"), filed a voluntary

petition for relief under Chapter 7 of the Bankruptcy Code. On November 14, 2013, the Debtor

filed the within adversary proceeding seeking a discharge of her student loan debt pursuant to *11

U.S.C. §523(a)(8)*,[3] and thereafter on January 17, 2014, the Debtor filed her Amended Complaint.

On February 19, 2014, National Collegiate Trust ("NCT") filed its Answer to the Amended

---

[2]      On November 6, 2014, the Court issued an Order at Document No. 72, indicating that the facts listed in Paragraph 6 of the Joint Pretrial Narrative Statement/Stipulation ("Joint Pretrial Statement") (Doc. No. 47), would be deemed stipulated to if no Party in interest timely objected to such treatment. This Order became necessary based on the representations of Counsel for both the Plaintiff and the Defendant at the Final Pretrial Conference that the case should be decided on "stipulated facts," yet, Paragraph 6 of the Joint Pretrial Statement contained what appeared to be a typographical error that the stipulated facts were "NCT's Proposed Facts Only." The deadline has since passed, and no Party filed an objection. Accordingly, for purposes of this Memorandum Opinion, the Court shall treat the facts contained in Paragraph 6 of the *Joint Pretrial Statement* as having been stipulated to by the Debtor and NCT.

[3]      The original Complaint listed six other Defendants in addition to NCT: (1) American Education Services, (2) Pennsylvania Higher Education Assistance Agency, (3) PNC Educational Loan Center, (4) National City Bank, (5) Sallie Mae, and (6) U.S. Department of Education. Regarding Sallie Mae, on December 13, 2013, the Court approved a Stipulation dismissing Sallie Mae as a Party to this adversary proceeding and discharging the Debtor's debt owed to Sallie Mae. On January 8, 2014, Educational Credit Management ("ECM") filed a *Consent Motion to Intervene and for Substitution of Certain Parties*. On January 9, 2014, the Court issued an Order substituting ECM as a Defendant and terminated American Education Services, Pennsylvania Higher Education Assistance Agency, and PNC Educational Loan Center as Defendants in this case. On May 2, 2014, regarding the U.S. Department of Education, the Court issued an Order dismissing without prejudice the Debtor's claims against this Defendant. National City was presumed to be an improper Defendant as it is no longer in business. As a result, NCT is the only remaining Defendant to this adversary proceeding.

Complaint. On June 19, 2014, the Parties filed an Amended Joint Pretrial Narrative Statement/Stipulation.

The Debtor is 36 years old and resides in Erie, PA with her ten-year-old daughter over whom she has full custody. She owns no real property and is not currently married. From 1998-2010, the Debtor attended Edinboro University. From 1997-2010, the Debtor attended Tri-State Business Institute and Great Lakes Institute of Technology. The Debtor has never obtained a diploma, but she was awarded a "Certificate for Medical Office Assistant" from Great Lakes Institute of Technology.  The Debtor is indebted to the Defendant for eight student loans. The Debtor herself has never made any payments on these loans. On November 15, 2011, NCT last received payment from the Debtor's mother for two of the loans, and on September 9, 2011 for the other six loans.

Regarding the gross amount owed to NCT, the Parties have stipulated at Document No. 58 that the Debtor owes NCT a total of $93,980.58 and that as of July 23, 2014, the current per diem interest rate on this gross amount is 0% which is subject to change if the loan is assigned to another creditor or reduced to judgment.

Currently the Debtor is unemployed. According to her Schedule I, the Debtor has a current monthly income of $1,250 of which $250 is from child support. The Debtor's Schedule J reflects monthly expenses totaling $6,217. However, since the filing of her Bankruptcy Petition, the Debtor is no longer operating her former business, Little Diva Day Spa, therefore, her expenses have been reduced by $4,500. Accordingly, the Debtor's expenses total $1,717 per month.

Finally, the Debtor admits she suffers from no physical or mental disabilities or other personal limitations that would in any way impair her ability to maintain future employment and affect her ability to repay her student loans.

### DISCUSSION

Under the Bankruptcy Code, as a general rule, student loan debt is not dischargeable. However, *Section 523(a)(8)* contains an exception to this general rule. Specifi-.\cally this section provides in relevant part that:

>  (a)     A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt  . . .
>
>  (8)     unless excepting such debt from discharge under this paragraph would impose an *undue hardship* on the debtor and the debtor's dependents, for--
>
>  (A)(i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution;[4]
>
>  (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>  (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

*11 U.S.C. §523(a)(8)* (emphasis added).

---

[4]     The only evidence that *Section 523(a)(8)* applies to the Debtor's student loan debt subject to this adversary proceeding is a statement in NCT's s *Brief* filed at Document No. 57, that the loans "were made under the Astrive Education Loan program and were guaranteed by TERI, a non-profit institution." Although, as noted later in this *Opinion*, unsubstantiated statements in briefs do not constitute evidence for purposes of consideration, since neither Party raised the inapplicability of *11 U.S.C. §523(a)(8)* as an issue, the Court will treat the Debtor's *Complaint* as an admission that *Section 523(a)(8)* applies to her student loan debt.

While Congress did not define the phrase "undue hardship," the meaning of this phrase as it pertains to the discharge of student loan debt in bankruptcy is well settled in the Third Circuit. *See Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298 (3d Cir. 1996). In *Faish*, the Court of Appeals for the Third Circuit adopted the "undue hardship" test as set forth in *Brunner v. New York State Higher Education Corp.*, 831 F.2d 395 (2d Cir. 1987) ("*Brunner* test"). *Id.*

Pursuant to the *Brunner* test, the Debtor must demonstrate that: (1) she cannot maintain, based on her current income and expenses, a minimal standard of living for herself and her dependent if required to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the student loan repayment period; and (3) the Debtor has made a good faith effort to repay her loans. *Faish,* 72 F.3d at 304-05. The Debtor bears the burden of proof with regard to each of these three requirements by the preponderance of the evidence in order to establish a right to discharge her student loan debt. *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cr. 2001). If one of the three elements of the test is not met, because the test is written in the conjunctive, the Court's inquiry ends there, and the student loan debt is not dischargeable. *In re Faish*, 72 F.3d at 298. *In re Brightful*, 267 F.3d 324. Moreover, the test must be strictly applied. The Court cannot consider extraneous factors not contemplated by the test including other equitable concerns. *In re Faish,* 72 F.3d at 306 (citing *Northwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1998)).

### Has the Debtor Made a Good Faith Effort to Repay the Loan?

Since resolution of this issue appears clear, the Court will begin by examining the third prong of the *Brunner* test. Under this prong, the Debtor must prove that she has made a "good

faith" effort to repay her student loan obligation over the entire time period from the date on which

the first loan payment became due to the date on which the Debtor filed her bankruptcy petition.[5]

*In re Cehula,* 327 B.R. 241, 246 (Bankr. W.D. Pa. 2005) (citing *Pelliccia v. U.S. Department of

Education,* 67 Fed. Appx. 88, 90 (3d Cir. 2003)). The Court's "good faith" analysis is guided by

the principle that a debtor may not willfully or negligently cause his or her own default. *Id.* Instead,

the Debtor's financial plight must be due to factors beyond her reasonable control. *Id.* (citing *In re

Faish,* 267 F.3d at 305. When determining whether a debtor has made a good faith effort to repay

her student loans, the Court must consider whether: (1) the debtor incurred substantial expenses

beyond those required to pay for basic necessities; and (2) the debtor made efforts to restructure

the loan before filing his or her bankruptcy petition. *In re Cehula*, 327 B.R. at 246.

       Here, the Debtor admitted that she has never made a payment on her student loans.

According to the *Brief in Support of Debtor Regarding Brunner Factors* ("Brief")*,* she indicates

she "was never in a financial position to make payments herself on the loan." However, there is

nothing in the record to support this assertion, and therefore, the Court may not accept the claim.

*See Versage v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) ("we have repeatedly

held that unsubstantiated arguments made in briefs or at oral argument are not evidence to be

considered by this Court"); *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir.

1989) ("statements made in briefs are not evidence of the facts asserted). The only evidence of the

Debtor's income and expenses during the relevant time period is her Bankruptcy Schedules I and

---

[5]     There is nothing in the record to indicate when the Debtor's first loan payment became
due. The Court can only assume that it became due sometime in 2010, because according to the
stipulation found in the Joint Pretrial Statement the Debtor's enrollment at Edinboro University
ended in 2010. Therefore, based on the record it appears that the relevant time period for
establishing good faith would be, at the latest, from the beginning of 2011 to October 11, 2013
when she filed for relief under Chapter 7 of the Bankruptcy Code.

J, which only provide a limited snapshot of the Debtor's financial history and a profit and loss history of her business from March 2013 through July 2013. Therefore, the evidence before the Court is incomplete and fails to support the Debtor's contention that she was unable to pay her loans from the time the first payment was approximately due until she filed for bankruptcy.

The Debtor also argues that she made a "good faith" attempt to repay her loans by asking her mother to make some of the payments and that this demonstrates she took her obligation seriously. However, the Debtor's mother is a co-signer on the loans, and hence, is also equally obligated to make payments. Furthermore, the Debtor's answers to NCT's interrogatories undermine her position in this regard as they are inconsistent with the assertions contained in her *Brief*. Based on the Debtor's answers to NCT's interrogatories, it does not appear that she requested her mother make payments, but rather her mother only made sporadic payments after being "harassed at work by debt collectors." Accordingly, without more and even if the Debtor's assertions in her *Brief* could be considered as evidence, the Court is unable to find that the Debtor has made a "good faith repayment" effort to repay her loans in the manner anticipated by application of the *Brunner* test.

Additionally, although the Debtor maintains modest monthly expenses, her unexplained failure to maximize her income earning potential also evidences her lack of "good faith" in repaying her student loans. *See In re Jones*, 392 B.R. 116, 128 (Bankr. E.D. Pa. 2008). The Debtor admitted that she has not sought employment since the closing of her business more than a year ago. She has also failed to demonstrate that she is currently unemployable either through affidavit, stipulation, discovery responses, or any admissions of record. Consequently, the Debtor's default and inability to repay her student loans is a result of her own willful inaction. In

fact, the Debtor's financial plight has only been exacerbated by her own inaction and her own choices — not because of factors beyond her control.

The Debtor also argues that her student loans should be discharged since they pose an undue hardship to her. She contends that even if she obtains employment, she has never earned more than $11 per hour, and that any increase in her income would be negated by the additional childcare costs she would incur for her daughter. However, the Debtor failed to provide any record evidence to support her claim in this regard. For instance, no expert market analysis was provided regarding the current state of the local economy, how much the debtor is likely to earn in her situation, or the current cost of childcare in this locale. The Debtor's claims in this regard, therefore, are no more than conjecture. The Debtor failed to even offer a personal affidavit to support her position in this regard. As previously noted, unsubstantiated statements in briefs do not constitute evidence for purposes of consideration. *See Versarge v. Township of Clinton N.J.,* 984 F.2d at 1370.

The Debtor also stipulated that she has no physical, mental, or medical conditions, or other circumstances, which would affect her ability to repay her student loans. She also responded to a number of the Defendant's discovery requests confirming that she does not have any physical, mental, or medical conditions, or other circumstances affecting her ability to pay her loans. Therefore, the current state of the record demonstrates just that — the Debtor suffers from no recognized infirmity that would allow this Court to discharge her student loan debt.[6]

---

[6]     The first indication that the Debtor may have a medical condition that could prevent her from repaying her loans was not disclosed until she filed her *Brief*. The Debtor's *Brief* asserts that as of July 2014, the Debtor was experiencing several health issues that prevented her from maintaining gainful employment.  At the Final Pretrial hearing where the Court entertained argument on the legal issues affecting the case, the Debtor also indicted for the first time that she filed a claim for social security disability, but she did not provide any proof of this filing. *See*

Nor did the Debtor provide any documentary evidence in the form of affidavits, medical records, or medical testimony in support of her position. She never supplemented her discovery responses with any sort of evidence, documentary or otherwise, that would establish that her health issues prevented her from repaying her student loans. *See Fed.R.Civ.P. 26(e)*. Therefore, the Court must find that no recognized medical condition prevents the Debtor from repaying her student loans.

Another important inquiry into the Debtor's good faith effort to repay her student loan obligation is whether she attempted to consolidate her student loans *prior* to her bankruptcy filing in order to make the debt repayment obligation less onerous. *See In re Jones*, 392 B.R. at 130 (emphasis added). Although consideration of any attempt by her to consolidate her loan obligations is neither dispositive nor a prerequisite to dischargeability under *Section 528(a)(8)*, such conduct can support a finding that the Debtor takes her loan obligation seriously and is striving to repay the loan, despite the unfortunate financial circumstances in which she finds herself. *Id.*; *see also In re McNemar*, 352 B.R. 621, 624 (Bankr. N.D. W.VA 2006); *In re Allen*, 324 B.R. 278 (Bankr. W.D. Pa. 2005).

Here, the Debtor failed to take advantage of her loan consolidation options prior to filing bankruptcy. The Debtor asserts in her *Brief* that she only discovered such options available to her under the Income-Contingent Repayment plan ("ICR") and the Income-Based Repayment

---

(*cont. from p. 8*) *Audio Transcript of Proceedings* dated Oct. 21, 2014, 10:31:38-10:35:27. Once again, these unsworn and unsubstantiated statements do not constitute record evidence in support of her position for purposes of consideration by the Court in deciding this matter. *See Versage v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) ("we have repeatedly held that unsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court"); *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) ("statements made in briefs are not evidence of the facts asserted).

("IBR") plan[7] after she filed for bankruptcy. She further contends in her *Brief* that since NCT does not offer an ICR or IBR repayment option, her attempts to restructure her loans *postpetition* under these programs demonstrates that she does take her student loan debt seriously and is making a "good faith" effort to repay her loans.

Any positive or beneficial inference gleaned from the Debtor's attempt to consolidate her student loans was eliminated, or at least outweighed to such a degree as to become a non-factor, when she failed to consolidate her loans prior to filing for bankruptcy as required by the "good faith" analysis outlined *supra*. It irrelevant that NCT does not offer an IBR or ICR repayment plan, because the stipulation filed at Document No. 58 states that any settlement of the debt to NCT, at least up to and through the time of this adversary case, would be at 0% interest, therefore, supporting a finding that NCT was and remains willing to work and cooperate with the Debtor in retiring the debt on favorable terms.

Finally, in her *Brief*, the Debtor argues that even if she were able to make payments, it would be fruitless to do so since, by doing so, she would be nowhere near fulfilling the financial commitment required by the debt especially when considering the potential for additional fees, interest, and penalties. This argument fails to help the Debtor, either. Actually it supports a contrary finding, that is, the Debtor never really had any intention of repaying the debt. *See In re Fabrizio*, 369 B.R. 238 (W.D. Pa. 2007). Furthermore, the argument is counter to the Debtor's claim of demonstrating a "good faith" effort to repay the loan. As previously noted, her stipulation with NCT at Document No. 58, that any settlement of the debt owed to it through the time of this adversary case would be repaid at 0% interest, makes clear that *any* such payment made would

---

[7]      Neither party explained the terms "IBR" or "ICR" or how these repayment plans are calculated.

directly reduce principal and not simply go to interest and other carrying charges. Therefore, any payment would directly benefit the Debtor's long term debt situation. As such, the Debtor is unable to meet her burden of establishing good faith pursuant to the third prong of the undue hardship test. As a result, the Debtor's student loans are nondischargeable pursuant to *Section 523(a)(8)*.

Since the *Brunner* test requires all three factors to be independently proven for the Debtor's loans to be discharged, because of the above finding, it is unnecessary to review the applicability of the remaining two prongs of the *Brunner* test. Nonetheless, since alternative reasons exists for denying the relief requested in the Complaint further discussion of the Debtor's contentions is warranted.

### Can the Debtor Maintain a Minimal Standard of Living?

The first prong of the *Brunner* test requires the Debtor to prove that she cannot maintain a minimal standard of living based on her current financial condition if forced to repay her loans. *In re Faish*, 72 F.3d at 306. This prong of the test requires the Court to evaluate the Debtor's present income and expenses and determine a "flexible minimal standard of living level sensitive to the particular circumstances of each case through the application of common sense." *In re Kelly*, 351 B.R. at 53; *In re Porrazzo*, 307 B.R. 345, 348 (Bankr. D. Conn. 2004). In applying this prong of the test, the Debtor's income and expenses should not be regarded as unalterable. *Goforth v. U.S. Dept. of Educ. (In re Goforth),* 466 B.R. 328 (Bankr. W.D. Pa. 2012).  The Court may consider whether it would be unconscionable to require the Debtor to take any steps to earn more income or to reduce her expenses. *Id.* (citing *Faish,* 72 F.3d at 307).  A mere showing that the Debtor's finances will be "tight" will not suffice in meeting the Debtor's burden as to this prong of the test. *In re Faish*, 72 F.3d at 306; *In re Cehula*, 327 B.R. at 245.

Here, the Debtor's Schedules reflect that she has monthly income totaling $1,250 and adjusted expenses of $1,717 per month now that she is no longer operating her business. Although, a review of the Debtor's expenses indicates that there is little room for her to further reduce or eliminate her "cost of living" expenses, and all of those expenses appear reasonable, based on the current record, there nevertheless remains an opportunity for the Debtor to increase her income in an amount that could be used to repay her current student loan obligations.

The Debtor admitted that she is currently unemployed, has been living off of her tax return refund, and has not started to look for a job. As previously noted, the Debtor suffers from no medical condition which prevents her from working. Therefore, from all record appearances, the Debtor has the current ability to obtain employment, and the Court finds that it would not be unconscionable or even unreasonable, to require the Debtor to increase her income beyond the $1,250 per month she currently lists on her Schedule I. Nor did the Debtor present any evidence to the contrary.

The Debtor also argues that she is not in a position to maintain a minimal standard of living because her student loans are currently due in full. Moreover, she argues that the amount of her student loan debt and the payments that would be required pose an undue hardship that prevents her from being able to maintain a minimal standard of living. Unfortunately for the Debtor, the ratio of loan debt to income, *per se*, is irrelevant under the *Brunner* test in evaluating whether the Debtor can maintain a minimal standard of living. *See, e.g., In re Goforth,* 466 B.R. at 337 (holding that the ratio of debt to income is irrelevant as an equitable consideration where the debtors argued that the magnitude of their student loan debt compared to their annual income was so high that other student loan cases finding a lack of undue hardship in such instances should be disregarded). This represents an attempt by the Debtor to inject an extraneous factor or equitable

12

concern which, pursuant to *Faish*, must be excluded. *Goforth*, 466 B.R. at 337. Also, NCT has

admitted it would consider reasonable settlement offers proffered by the Debtor yet the record

reflects that none have been forthcoming.

   For all of the above reasons, the Court finds that the Debtor has also failed to

demonstrate that she cannot maintain a minimal standard of living pursuant to the *Brunner* test.

As, such the Debtor has failed in her burden as to the first prong of the *Brunner* test as well.

   Now that the Court has determined that the Debtor failed to meet her burden of

proof as to prongs one and three of the *Brunner* test, it could end the discussion here and properly

deny the Debtor's *Complaint* for the reasons given. Despite these findings, for the sake of

completeness, the Court believes it appropriate to also review the effect of the second prong of the

*Brunner* test and the Debtor's argument in this regard in light of the current record.

### *Is the Debtor's Financial Condition Likely to Persist?*

   The second prong of the *Brunner* test requires the Debtor to show that her current

state of affairs will not improve for a significant portion of the student loan repayment period. *In

re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001). Courts considering this prong have found it to be

a "demanding requirement" because the Debtor must prove a total incapacity to pay her debts in

the future for reasons not within her control. *Id.*  It is not enough for the Debtor to prove she is in

financial straits or faces "a present inability to fulfill [her] financial commitment." *Id.* This prong

requires definitive evidence that the Debtor's earning potential will not improve in the future. *In

re Greco*, 241 B.R. 670 (Bankr. E.D. Pa. 2000). The reason such a heavy burden is placed on the

Debtor in meeting the requirements of the second prong of the *Brunner* test, is to effectuate

Congress's intent to make the discharge of student loans more difficult than that of other nonexcepted debt. *In re Brunner*, 831 F.2d at 396.

As demonstrated by the current record, the Debtor is well-educated. She holds a Certificate for Medical Office Assistant from Great Lakes Institute of Technology and has some other vocational training in addition to taking classes at Edinboro University. She also has experience owning and operating her own business, i.e., Little Diva Day Spa. The Debtor clearly possesses an educational background and experience that increases her marketability for obtaining future employment that would ostensibly appeal to a wide array of prospective employers. However, the Debtor has, by her own admission, voluntarily chosen not to look for employment since closing her business. She also did not offer any evidence that her current unemployed status is likely to continue for reasons outside her control or that she is unable to earn more than what her Schedule I income reflects. At best, the current record supports a finding that the Debtor has only demonstrated a current, temporary inability to pay her student loan obligations, since she remains *voluntarily* unemployed. Without any record evidence to the contrary, it logically follows that if the Debtor obtains employment, it is likely that her financial condition will improve.

In evaluating whether a debtor's present state of affairs is likely to persist for reasons over which she has no control, courts typically also give great weight to demonstrated physical, mental, emotional and/or psychiatric disabilities or impairments preventing one from working. *See, e.g.*, *In re Brightful*, 1999 WL 1024516, at*2 (Bankr. E.D. Pa. Nov. 8, 1999); *In re Kelly*, 351 B.R. 45, 54 (Bankr. E.D.N.Y. 2006). As discussed *supra*, the Debtor admitted and the Court has already found that the Debtor possesses no physical or mental conditions which would interfere with her ability to maintain or actually improve her standard of living if she were to seek and obtain employment.

In an attempt to meet her burden of proof under the second prong of the *Brunner* test, the Debtor argues that her present financial condition is likely to persist, because if she acquires employment, her expenses will increase, thereby offsetting any increase in her income. However, the Debtor offered no record evidence (for instance, increased daycare costs either by documentary or testimonial evidence) to support such a contention.

Finally, the Debtor again argues that the Court should consider the amount of her outstanding debt in resolving this aspect of the *Brunner* test. She asserts that even if she were to make payments, she would not be able to meet the financial commitment required by the debt. As, the Court previously noted, this is an equitable factor that cannot be considered. *See Goforth*, 466 B.R. at 337. For all of the above reasons, the Court finds that, as with the other elements of the test, the Debtor failed to meet her burden of proof in satisfying the requirements of the second prong of the *Brunner* test.

## CONCLUSION

For the foregoing reasons, the relief requested in the Debtor's **Amended Adversary Complaint to Determine Dischargeability of Student Loans** will be denied and judgment entered in favor of the Defendant pursuant to *Fed.R.Bankr.P.7054*. The Debtor will remain personally liable on her student loans.

An appropriate Order will be entered.

Dated: January 14, 2015

Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve:
    Debtor
    Laura S. Steehler, Esq., for the Debtor
    Monette W. Cope, Esq., for the Defendant
    Keri P. Ebeck, for the Defendant